## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MEDHI KASSAI,**<br><br>**Defendant.** | Crim. No. 2:18-746 (WJM)<br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

Pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663 *et seq.*, the Government seeks restitution from Defendant Medhi Kassai ("Kassai" or "Defendant") for losses resulting from a scheme to defraud lenders in connection with the short sale of 33 different properties. For the reasons discussed below, the Government's request for a restitution order of $7,942,646.46 is **granted.**

## I.  BACKGROUND

On December 18, 2018, Kassai entered a guilty plea to a four-count information charging him with: bank fraud, for participating in a scheme to defraud mortgage lenders, in violation of 18 U.S.C. § 1344 (Counts One and Two); wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343 (Counts Three); and money laundering, in violation of 18 U.S.C. § 1957 (Count Four). On May 24, 2023, Kassai was sentenced to a term of 16 months' imprisonment and three years of supervised release. ECF No. 31.

The amount of restitution sought by the Government is the difference between the unpaid balance of the bank loans and the short sale prices that Defendant obtained for resale of the properties listed in Government Exhibit 1. In contrast, Kassai argues that restitution should be $4,771,400.00, calculated by offsetting the short sale prices from the amounts Kassai obtained in reselling the short sale properties (market value) as set forth in Def. Ex. A. Because the parties have stipulated that the underlying figures are accurate for purposes of calculating restitution and disagree only as to the *method* of calculation, the Court decides this issue without need for a restitution hearing.

## II.  DISCUSSION

Under the MVRA, "defendants who are convicted of or plead guilty to certain crimes pay restitution to their victims." *United States v. Sporrer*, 545 F. App'x 163, 166

(3d Cir. 2013) (citing *United States v. Quillen*, 335 F.3d 219, 222 (3d Cir. 2003)). The statute's purpose is, "to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being." *Id.* (citing *Quillen*, 335 F.3d at 222). "District courts have wide discretion to make a reasonable estimate of loss when ordering restitution." *United States v. Faye*, 728 F. App'x 120, 124 (3d Cir. 2018) (citing *United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007)); *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006) (construing "value" as used in MVRA to be "flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose.").

The Government has the burden of proving loss by a preponderance of the evidence. *U.S. v. Lopez*, 503 Fed. App'x 147, 149 (3d Cir. 2012). Once the Government makes a *prima facie* case regarding loss amount, the burden shifts to the defendant to "provide evidence that the Government's evidence is incomplete or inaccurate." *United States v. Opitz*, 704 Fed. App'x 66, 69 (3d Cir. 2017). Here, Defendant has not disputed his responsibility to make restitution for the loans at issue. Nor does he argue that the Government has not met its *prima facie* burden regarding the amount of the actual unpaid principal balances of the loans used by the Government in its calculations.[1] Rather, Defendant contends that the unpaid loan balances are not "actual losses" because he believes the financial institutions would never have recovered the unpaid principal balance on properties that were already "underwater"[2] and thus the short sale prices should be credited from market value of the properties. The Court disagrees.

First, the MVRA provides that where damage or loss is to a victim's property and the "return of the property" is impossible, "the restitution order shall require that the defendant … pay an amount equal to … the value of the property on the date of the damage, loss, or destruction," 18 U.S.C. § 3663A(b)(1)(B)(i), less "the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B) (ii). In this case, the term "property" refers to the money lent by the banks rather than to the collateral, namely the real estate, that the banks received. *See Robers v. United States*, 572 U.S. 639, 642 (2014). Hence "if the 'property' that was 'damage[d],' 'los[t],' or 'destr[oyed]' was the money, then 'the property … returned' must also be the money." *Id.* at 643 (citing § 3663A(b)(1)). Accordingly, the restitution that Defendant must be ordered to pay is the value of the money loaned (the unpaid balance of the mortgage) rather than the market value of the real estate. *See United States v. Stone*, 866 F.3d 219, 226 (4th Cir. 2017) (finding district court correctly determined that values of mortgages on dates of fraudulent acts were remaining mortgage balances).

---

[1] *See* Stipulation, attached to Gov.'t Sept. 22, 2023 letter brief as Ex. 2.

[2] Property is often referred to as being "underwater" when "the home value drops below the amount of the outstanding debt on the note." *United States v. Jimenez*, 946 F.3d 8, 11 (1st Cir. 2019).

Moreover, under U.S.S.G. § 2B1.1(b)(1), Application Note 3(a)(i), "actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." "Reasonably foreseeable pecuniary harm," is the "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." Application Note 3(A)(iv). According to the Presentence Investigation Report, ¶ 32, ECF No. 23, which Defendant did not object to, Defendant's illegal acts included: deceiving victim lenders about the value of the short sale properties and the ability of short sale sellers to repay the mortgages; artificially lowering their apparent value by damaging drywall and removing appliances; hindering purchases of the properties by arms-length buyers through misrepresentations and other misdeeds; obtaining quit claim deeds from the short sale sellers to prevent others from buying the short sale properties; and selling the properties for more money than what he led the victims into believing they were worth. The Court concludes that Defendant knew or reasonably should have known that such fraudulent conduct would result in pecuniary loss in the amount of the unpaid balances on the loans. *See United States v. Engelmann*, 720 F.3d 1005, 1013-14 (8th Cir. 2013) ("'[t]he appropriate test is not whether market factors impacted the amount of loss, but whether the market factors and the resulting loss were reasonably foreseeable.'" (internal citation omitted)).

Indeed, other courts have credited sale proceeds from unpaid loan amounts to calculate loss. *See e.g., United States v. Jimenez*, 946 F.3d 8, 13 (1st Cir. 2019) (affirming sentence where district court calculated loss amount by subtracting amounts received in short sales from remaining loan amount secured by mortgages); *United States v. Mshihiri*, 816 F.3d 997, 1009 (8th Cir. 2016) (affirming judgment where calculation of loss was unpaid principal balance on fraudulently obtained mortgages less sales proceeds for each property); *Engelmann*, 720 F.3d at 1013-14 (holding district court did not clearly err in offsetting the short sales prices from the unpaid loan balances as that amount reflects profit victim lost on particular mortgage and is method recommended by guidelines, USSG § 2B1.1, Application Note 3(E)(ii)[3]); *Souels v. United States*, No. 15-07563, 2017 WL 3671524, at *4–5 (D.N.J. Aug. 25, 2017) (calculating loss as difference between total loan amount and amount recovered upon resale of property).

In sum, the difference between the unpaid balance of the bank loans and the short sale prices is a reasonable and foreseeable estimate of loss. Defendant is jointly and severally liable with his co-schemers for restitution in the amount of $7,942,646.46.

---

[3] In calculating loss, Application Note 3(E)(ii) provides for a credit against the loss including as follows: "In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing."

## III.   CONCLUSION

For the foregoing reasons, the Government's request for restitution in the amount of $7,942,646.46 is **granted**. An appropriate Order accompanies this Opinion.

Dated: September 29, 2023

WILLIAM J. MARTINI, U.S.D.J.